RUECKEL ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* TEXAS EASTERN TRANSMISSION CORPORATION ET AL., APPELLANTS AND CROSS-APPELLEES.

_____

(Nos. 16-CA-81 and 18-CA-81—Decided December 7, 1981.)

*Messrs. Miller, Barnes & Christian* and *Mr. T. Michael Christian,* for Emil Robert Rueckel and Agnes Rowena Rueckel.

*Mr. Robert A. Lawhon, Messrs. Squire, Sanders & Dempsey, Mr. James J. Maiwurm* and *Mr. Charles E. Reed,* for Texas Eastern Transmission Corporation and Allegheny Pipeline Company.

HENDERSON, P.J. Case No. 16-CA-81 is an appeal from a summary judgment of the Court of Common Pleas of Fairfield County granting judgment to defendants-appellants, Texas Eastern Transmission Corporation (Texas Eastern) and Allegheny Pipeline Company (Allegheny), by determining that the pine trees planted on the rights-of-way of the defendants obstruct, burden and interfere with the exercise of their easement rights, and finding that defendants are entitled to remove the pine trees on their rights-of-way and that plaintiffs-appellees, Emil Robert Rueckel and Agnes Rowena Rueckel, are prohibited from interfering with the removal of the pine trees on the rights-of-way of Texas Eastern and Allegheny, but refusing to grant summary judgment on the issue of damages and refusing to find that the plaintiffs have no right to plant, maintain and grow trees on the rights-of-way of the defendants in the future.

Case No. 18-CA-81 is a cross-appeal by the plaintiffs from the summary judgment of the Court of Common Pleas of Fairfield County, enjoining plaintiffs from interfering with the removal of the

pine trees on the rights-of-way of Texas Eastern and Allegheny.

In case No. 16-CA-81, defendants raise the following assignment of error:

"The Court of Common Pleas of Fairfield County, Ohio erred in denying in part the motion of defendant and counterclaimant Texas Eastern Transmission Corporation and additional counterclaimant Allegheny Pipeline Company for summary judgment in that, after finding that the pine trees planted and maintained by plaintiffs on the Texas Eastern and Allegheny rights-of-way across the plaintiffs' property are akin to a permanent obstruction making ingress and egress across the plaintiffs' property impossible; that those trees obstruct, unreasonably burden and interfere with the exercise of the easement rights of Texas Eastern and Allegheny; and that Texas Eastern and Allegheny are entitled to remove those pine trees from their rights-of-way, the court stated that 'there remains for a jury a question as to what, if any, damages the plaintiffs have sustained' and (a) failed to issue a declaratory judgment to the effect that Texas Eastern and Allegheny are entitled to remove the pine trees within their rights-of-way across the plaintiffs' property without paying plaintiffs any compensation therefor; (b) failed to issue a declaratory judgment to the effect that plaintiffs have no right to plant, maintain and grow trees within the Texas Eastern and Allegheny rights-of-way across plaintiffs' property; and (c) failed to issue an order prohibiting plaintiffs from growing trees within the Texas Eastern and Allegheny rights-of-way across plaintiffs' property."

In case No. 18-CA-81, the cross-appellants (plaintiffs) raise the following assignments of error:

"I. The trial court committed prejudicial error when it ordered that the easement holders, defendants-appellants, had a right to remove the trees on the plaintiffs-cross-appellants' premises within the pipeline rights-of-way where the documents creating the easements did not proscribe the planting of trees and even contemplated the fact of there [sic] planting, the trees did not in any way damage the pipe in the ground, the easement documents did not provide for free ingress and egress for maintenance purposes, and the removal of the trees was necessitated only because of maintenance procedures which constituted increased, uncontemplated, and consequently, unlawful burdens on the landowners.

"II. The trial court committed prejudicial error when it granted summary judgment declaring and ordering that the easement holders, defendants-appellants, were entitled to remove trees from the plaintiffs-cross-appellants' premises as there existed unresolved questions of fact (A) as to the construction of the easement documents, (B) as to the inability of the easement holders to obtain the relief requested by them because of the applicability of the doctrines of laches and estoppel, and (C) as to whether the court-ordered right of the defendants-appellants to remove the trees constituted an unlawful burden on the landowners."

This opinion will serve to answer the assignments of error in case Nos. 16-CA-81 and 18-CA-81 and will be filed in both cases.

This case arose out of a dispute between plaintiffs (the landowners) and Texas Eastern and Allegheny, concerning the rights of the landowners under rights-of-way granted by the landowners' predecessors in title (the Foxes). The first right-of-way grant was dated December 18, 1942, and was filed for record on February 20, 1943 at 9:25 a.m. The second right-of-way grant was dated February 8, 1949 and was filed for record on March 14, 1949 at 10:57 a.m.

Plaintiffs filed a complaint against Texas Eastern and Allegheny on November 9, 1979, seeking damages for pine trees damaged or destroyed in the course of maintenance operations carried out by Texas Eastern in November 1977. Plain-

tiffs also sought a declaratory judgment with regard to their future right to plant trees within the area of the pipeline rights-of-way and a determination of whether defendants must compensate plaintiffs for any trees removed within the rights-of-way or damaged in the course of pipeline maintenance procedures.

Texas Eastern and Allegheny filed an answer to plaintiffs' complaint and filed a counterclaim seeking a declaratory judgment to find and declare that:

(1). The pine trees planted by plaintiffs within the Texas Eastern right-of-way obstruct, unreasonably burden and interfere with the exercise of the easement rights of Texas Eastern and Allegheny;

(2) Texas Eastern and Allegheny are entitled to remove the trees within their rights-of-way across the plaintiffs' property without paying compensation therefor; and

(3) The plaintiffs (landowners) have no right to plant, maintain and grow trees within the rights-of-way of the defendants.

Defendants also sought an injunction prohibiting the landowners from interfering with the removal of the pine trees on the defendants' rights-of-way and further prohibiting, in the future, the landowners from growing trees on said rights-of-way. On June 2, 1980, a motion for summary judgment was filed by the defendants.

On November 25, 1980, the Court of Common Pleas of Fairfield County, after considering the motion of the defendants, the affidavits of the parties and their memoranda of law, issued a summary judgment (a copy of which is attached hereto, marked "Exhibit A," and made a part hereof), in which the court found that the pine trees were a permanent obstruction, making ingress and egress impossible, and that the pine trees on the defendants' rights-of-way across plaintiffs' property did obstruct, unreasonably burden, and interfere with the exercise of the easement rights of the defendants. The court further found that the defendants were entitled to remove the pine trees on their rights-of-way across the property of the plaintiffs and that the plaintiffs were to be prohibited from interfering with the removal of the pine trees on the defendants' rights-of-way.

The court, however, refused to determine what, if any, damages the landowners had sustained, holding that this was a jury question and further refused to issue the declaration sought by the defendants, to the effect, that (1) Texas Eastern and Allegheny were entitled to remove the pine trees within their rights-of-way across the landowners' property without paying the landowners compensation therefor, and (2) the landowners had no right to plant, maintain and grow trees within the defendants' rights-of-way across the landowners' property. The court also refused to issue an order prohibiting the landowners from growing trees within the defendants' rights-of-way across the property.

From the affidavits attached to the motion for summary judgment, we find that the pine trees involved in this dispute were first brought to the attention of Texas Eastern in the fall of 1973. Thereafter, correspondence between Texas Eastern and the landowners occurred and the landowners were expressly advised that Texas Eastern and Allegheny had the right to remove the trees from their rights-of-way where such trees interfered with the proper operation, inspection, maintenance or repair of defendants' pipelines. The landowners admitted that they received such notification. However, the trees did not create an

immediate problem until November 1977, when Texas Eastern was engaged in the installation of a cathodic protection system, designed to protect Texas Eastern and Allegheny pipelines on the landowners' property from corrosion. When Texas Eastern removed some of the trees within the limits of the rights-of-way in order to begin installation of this system, the landowners objected and prevented the crew from completing the installation of the cathodic protection system. Negotiations between the companies and the landowners continued until November 9, 1979, when the landowners filed their complaint.

The evidence further indicates that the first pipeline right-of-way, over what is now plaintiffs' property, was granted by plaintiffs' predecessors in title, Carl M. and Forest Fox, to the Defense Plant Corporation in December 1942. A copy of that right-of-way grant is attached hereto, marked "Exhibit B," and is made a part hereof. The second right-of-way grant was a grant from Carl M. and Forest Fox to Texas Eastern in 1949. A copy of that right-of-way grant is attached hereto, marked "Exhibit C," and is made a part hereof.

The record further indicates that in 1962 Texas Eastern transferred to Allegheny the right to construct, maintain and operate one pipeline across Fairfield County, Ohio, including the property now owned by plaintiffs. The plaintiffs have conceded that they had actual notice of the Texas Eastern and Allegheny rights-of-way when they purchased the property in 1965.

The evidence before the trial court further indicates that the rights-of-way across this property are occupied by three major interstate natural gas pipelines, twenty-four, twenty and sixteen inches in diameter, owned by Texas Eastern, and an eight-inch petroleum-products pipeline owned by Allegheny. The natural gas pipelines were constructed in 1942, 1943 and 1949. The natural gas transmission pipelines located on this property transport natural gas from Texas to Northeastern states. The evidence further indicates that the Allegheny petroleum-products line on the plaintiffs' property was constructed in 1962 and transports refined petroleum products from Ohio to Pennsylvania and New York.

An examination of the Right-of-Way Grant to Defense Plant Corporation indicates that there is no definition of the width of the multiple line rights granted thereunder. The instrument reads, in part, as follows:

"KNOW ALL MEN BY THESE PRESENTS: That * * * Carl M. Fox & Forest Fox, husband and wife, * * * do * * * hereby grant, bargain, sell and convey unto Defense Plant Corporation * * * the right to lay, operate, renew, alter, inspect and maintain a pipe line for the transportation of oil, gas, petroleum products or any other material or substance which can be transported through a pipeline, or any one or more of said substances, Grantee selecting the route, upon, over, under and through the following described land situated in the County of Fairfield, State of Ohio,

"And in the township of Bloom, being the North half of the North West Quarter of Section No. 35, Township No. 14, Range No. 20, containing 80 acres, more or less."

Likewise, in the Right-of-Way Grant to Texas Eastern, the granting clause reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, That * * * the said Grantor does hereby Grant and Convey unto Texas Eastern Transmission Corporation

(herein styled Grantee), its successors and assigns, a right of way and easement to construct, maintain and operate pipe lines and appurtenances thereto, and to construct, maintain and operate, in connection with the conduct of its business, telegraph, telephone and power lines and appurtenances thereto, including the necessary poles, guy wires and anchors, the grantee selecting the routes over and through the following described lands situated in Fairfield County, State of Ohio, to-wit:

"Being the North half of the Northwest quarter (NW ¼) of Section No. 35, Township No. 14, and Range No. 20., containing 80 acres, more or less."

Defendants argue that, consistent with sound pipeline construction and maintenance practices, the pipelines across plaintiffs' property are spaced approximately twenty-five feet apart. For normal maintenance and operating purposes, an additional twenty-five feet of right-of-way is required to the north of the northernmost pipeline and to the south of the southernmost pipeline across said premises. They conclude, therefore, that, at a minimum, these rights-of-way involve a hundred twenty-five-foot-wide strip across plaintiffs' property.

The evidence further indicates that, for approximately twenty-five years, these rights-of-way remained free and clear of trees and other obstructions and that the property was used for growing corn. The record indicates that plaintiffs began to plant the pine trees in question on defendants' rights-of-way sometime after 1971. The record further indicates that the pine trees located on plaintiffs' property are at the southwest corner of Marcy and Betz Roads and are within the 125-foot right-of-way which defendants argue that they have across said property. The evidence further indicates that the plaintiffs' property located at Marcy and Betz Roads is covered with a well-established and dense stand of White and Austrian Pine which appears to be from seven to ten years old, varying in height from four to sixteen feet, and from one to three inches in diameter. The evidence further indicates that the plaintiffs have stated that they hope to eventually sell the trees as commercial timber for a profit, but that said pine is not of any commercial value now because of its size. Defendants argued to the trial court that this dense stand of pine trees interfered with aerial surveillance of the pipelines across this property and also that it is standard practice to observe surface conditions on and adjacent to the transmission line right-of-way to determine if there are any leaks, construction activity or other factors affecting safety and operation. (This is required by the Federal Pipeline Safety Regulations.) Texas Eastern by affidavit also put before the court the fact that they use a combination of aerial patrols, vehicle patrols, and foot patrols to survey these lines, that aerial patrols are the primary means of observing the lines and that they are observed on a weekly basis. Defendants conclude, therefore, that in order for an aerial patrol to be effective, the right-of-way must be marked, cleared and maintained so that the pilot is able to follow the right-of-way from the air by observing pipeline markers at road crossings and a properly cleared and maintained right-of-way between such road crossings.

The court also had evidence before it that Texas Eastern and similar pipeline companies are required to control the corrosion which affects metals, and in particular with respect to pipelines, since the conditions under which corrosion takes place are present when pipelines are buried underground. The evidence indicates that three of the four pipelines crossing this land, that is, the twenty-inch and the sixteen-inch natural gas pipelines and the eight-inch Allegheny, refined-petroleum products pipeline, were coated with protective coatings before or during their construction, but that the twenty-four-inch Texas Eastern natural gas

pipeline, installed by Defense Plant Corporation, did not have a protective coating before installation. The evidence further indicates that there is now a second method of controlling corrosion, and that that method consists of making all parts of the pipeline cathodic, because corrosion does not occur at cathodes. The evidence further indicates that Texas Eastern had made tests which indicated that the existing ground beds in the area of plaintiffs' property required supplementation with additional cathodic protection.

Defendants argue that the installation of cathodic protection systems may require more than the usual twenty-five-foot right-of-way on each side of a pipeline and that trees or structures within the right-of-way hamper and slow down the installation and maintenance of the cathodic protection system. It was their argument that the pine trees located on the Texas Eastern and Allegheny rights-of-way across the plaintiffs' property substantially interfered with and hampered normal maintenance and operating procedures with respect to petroleum products and natural gas pipelines. Defendants therefore asked the trial court to determine that said pine trees obstructed, unreasonably burdened and interfered with the exercise of the easement rights of Texas Eastern and Allegheny; and the trial court did so declare in its summary judgment order dated March 4, 1981.

Defendants' assignment of error is that, after the court found that the pine trees that were planted and maintained by plaintiffs on the rights-of-way across plaintiffs' property were obstructing, unreasonably burdening and interfering with the exercise of the easement rights of Texas Eastern and Allegheny and that Texas Eastern and Allegheny were, thus, entitled to remove the pine trees from the rights-of-way, the court then determined that there could be a question of damages, concerning the removal of the trees, for a jury to determine. The assignment of error also is directed to the fact that the court failed to issue a declaratory judgment to the effect that Texas Eastern and Allegheny were entitled to remove the pine trees without paying plaintiffs compensation therefor, and that the court also failed to issue a declaratory judgment to the effect that plaintiffs had no right to plant, maintain and grow trees in the future within the Texas Eastern and Allegheny rights-of-way across plaintiffs' property. Lastly, defendants find error in the trial court's refusal to issue an injunctive order prohibiting plaintiffs from growing trees in the future within the rights-of-way across plaintiffs' property.

We sustain the trial court's determination, first, that plaintiffs are not entitled to grow trees on the rights-of-way that obstruct, unreasonably burden and interfere with the exercise of the easement rights by the owners of those rights, and, second, that Texas Eastern and Allegheny have the right to remove such trees from their rights-of-way which, in fact, do obstruct, unreasonably burden and interfere with the exercise of their rights as easement owners. We disagree, however, with the court below that there is an issue of damages or compensation to the plaintiffs for the removal of these trees; and we find the court's action totally inconsistent in this regard. If, in fact, the court is going to restrict the landowners from engaging in activities which are inconsistent with or interfere with the easement rights of the defendants, then it follows, that if the plaintiffs plant trees on their property which obstruct, unreasonably burden and interfere with the exercise of the easement, including the right to engage in appropriate pipeline maintenance operations, then the growing of such trees is inconsistent with the easement rights of defendants and is prohibited under the rights-of-way grants and plaintiffs are not entitled to compensation for the trees that are removed. We find, in fact, that the damage clause,

which appears in both of these rights-of-way grants, refers to the original construction of such pipelines and also for damages to stock, crops, fences, timber and land which occur as a result of the original construction thereon, and thereafter, only to those matters which do not interfere with the rights of the easement holder.

We are also concerned with the extent of the rights-of-way and note that the trial court did not determine the width of such rights-of-way. It is our intention to remand this cause to the trial court for a determination of the width of said rights-of-way and for the making of a declaration as to what the court finds with regard to the question of the width of the pipeline easements involved herein.

However, we find that the interpretation which the court below gave to the damage clauses — which was to require compensation for damage to or removal of trees planted by plaintiffs that obstruct, unreasonably burden or interfere with the rights of Texas Eastern and Allegheny — cannot stand. To so hold would negate the rights conveyed in the rights-of-way grants, including the right of ingress and egress. Obviously, this right of ingress and egress is absolutely essential to the use and maintenance of the rights-of-way and a critical element of the initial grant of the rights-of-way. Secondly, pipeline rights-of-way grants, like other utility easements, are general and deal briefly with the payment of compensation to the landowner for damages caused by construction and maintenance operations. We find that it is appropriate to separate the occurrences for which damages should be paid, from those situations which do not require compensation. The proper test would be to determine whether the existence of the object or activity within the rights-of-way, for which compensation is claimed, represents the exercise by the property owner of a retained property right or an infringement upon the easement-holder's rights. We hold here that to permit a jury to speculate on damages clearly rewards a landowner who has infringed upon an easement-holder's rights. We find further that the damage clauses[4] in the right-of-way agreements involved in this case cannot be interpreted to require compensation for the pine trees which were planted after completion of the pipeline construction.

We find from an examination of the law of Ohio that there is very little precedent with regard to the issues raised in this particular case. The general rules governing the relative rights of the landowner and the easement owner in Ohio are set forth at 18A Rev. Ohio Jurisprudence 2d, 496-497, Easements, Section 49, which reads, in part, as follows:

"* * * The extent and limitations of an easement created by express grant are to be ascertained from the language of the grant and the circumstances surrounding the transaction. The unrestricted grant of an easement gives the grantee all such rights as are necessary to the reasonable and proper enjoyment thereof. An ease-

---

[4] Reporter's Note: The damage clause in the Defense Plant Corporation Right-of-Way Grant (Exhibit B) reads as follows:

"By the acceptance hereof, Grantee agrees to bury such pipelines so that they will not interfere with the cultivation or drainage of the land, and also to pay any and all damages to stock, crops, fences, timber and land which may be suffered from the construction, operation, renewal, alteration, inspection or maintenance of such pipelines."

The damage clause in the Texas Eastern Right-of-Way Grant (Exhibit C) reads, in part, as follows:

"* * * Grantee hereby agrees to bury all pipes to a sufficient depth so as not to interfere with cultivation of soil, and to pay any damages which may arise from the construction, maintenance and operation of said pipe * * *."

ment implies necessarily a fee in another, and hence it is a right by reason of such ownership to use the land for a special purpose, and one not inconsistent with the general property in the land of the owner of the fee. By the same token, the owner of the land which is subject to an easement has the right to use the land in any manner not inconsistent with the easement, and this is true whether the easement is created by grant or by reservation. Not even the owner of the fee has a right to interfere with the proper enjoyment of the easement or to grant to another rights which infringe upon it. * * *'' (Footnotes omitted.) See, also, *Gibbons* v. *Ebding* (1904), 70 Ohio St. 298, and *Pomeroy* v. *Salt Co.* (1882), 37 Ohio St. 520.

However, in order to answer the issues that have been raised in this case, it is necessary to seek a determination of either federal courts or other state courts which have passed upon the particular issues involved herein.

We hold that the proper application of the governing principles herein is set forth in *Buckeye Pipe Line Co.* v. *Keating* (C.A. 7, 1956), 229 F. 2d 795, at page 798, where the court stated:

"The owner of the fee may use the property through which the easement runs in any manner he desires, but he may not interfere with the plaintiff's enjoyment of its existing rights in the pipe line. *Panhandle Eastern Pipe Line Co.* v. *State Highway Commission,* 294 U.S. 613, 55 S. Ct. 563, 79 L. Ed. 1090. An easement is an interest in real property. It is expressed not in terms of possession or occupancy but in terms of use. Therefore, the property of the owner of an easement is taken from him not necessarily when the adverse party occupies the land, but only when he prevents or interferes with the owners' use of the easement. When that occurs there has been a taking of the property from the owner of the easement just as much as if an adverse party had taken real estate which another owned in fee."

In the later case of *Tenneco, Inc.* v. *May* (E.D. Ky. 1974), 377 F. Supp. 941, affirmed (C.A. 6, 1975), 512 F. 2d 1380, the court, on facts similar to *Buckeye Pipe Line Co.* v. *Keating, supra,* held that road construction and the necessity of encasing a pipeline constructed according to the terms of an easement, constituted an unreasonable interference with the dominant estate, the dominant estate being the easement.

It is this line of cases that we choose to follow in our holding in the case at bar. We specifically choose not to follow the finding of the court in the case of *Babler* v. *Shell Pipe Line Corp.* (E.D. Mo. 1940), 34 F. Supp. 10. We find in that case that the court determined in the abstract the relative rights of the parties as to a portion of the property and that such case is not precedent and does not answer the issues raised in the case *sub judice.* We elect instead to follow the precedent of those cases which have held that where a property owner unlawfully obstructs or interferes with the easement rights of an easement holder the holder of the easement rights has the authority to remove those obstructions. See *East Ohio Gas Co.* v. *James Bros. Coal Co.* (Tuscarawas C.P. 1948), 53 Ohio Law Abs. 438 [40 O.O. 440]; *Langhorst* v. *Riethmiller* (1977), 52 Ohio App. 2d 137 [6 O.O.2d 101]; *Wolf* v. *Roberts* (Tuscarawas C.P. 1945), 42 Ohio Law Abs. 449 [30 O.O. 499].

For the reasons set forth hereinabove, we sustain defendants' assignment of error and we remand this cause to the Court of Common Pleas of Fairfield County, with the following instructions:

(1) The plaintiffs' complaint should be dismissed with prejudice;

(2) The court should determine the width of the various pipeline easements covering the property of the plaintiffs;

(3) The court should declare that the pine trees within the Texas Eastern and

Allegheny rights-of-way across the plaintiffs' property obstruct, unreasonably burden and interfere with the exercise of the easement rights of Texas Eastern and Allegheny;

(4) The court should declare that Texas Eastern and Allegheny are entitled to remove the pine trees within their rights-of-way across plaintiffs' property without paying compensation therefor, since these trees were planted long after the construction of the pipelines, and that Texas Eastern and Allegheny do, in fact, have easement rights in this property which rights require plaintiffs not to obstruct, unreasonably burden and interfere therewith;

(5) The court should declare that the plaintiffs have no right to plant, maintain and grow trees within the Texas Eastern and Allegheny rights-of-way across their property, the width of which is to be determined by the trial court, where such trees obstruct, unreasonably burden and interfere with the maintenance of said pipelines;

(6) The court should declare that the plaintiffs are prohibited from interfering with the removal of the pine trees within the Texas Eastern and Allegheny rights-of-way across their property, the width of which is to be determined by the trial court; and

(7) The court should enjoin the plaintiffs from growing trees in the future within the rights-of-way of defendants, the width of which rights-of-way are to be determined by the trial court.

For all of the reasons set forth hereinabove, we hereby specifically sustain the assignment of error of the defendants, and we overrule the assignments of error of the cross-appellants (the plaintiffs). We, thus, reverse the judgment of the Court of Common Pleas of Fairfield County and remand this cause to said court for further proceedings consistent with this opinion.

*Judgment accordingly.*

PUTMAN and MCKEE, JJ., concur.